# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**DURRELL SIMS,**

     **Plaintiff,**

**vs.**                                                              **Case No. 4:16cv49-WS/CAS**

**JULIE L. JONES,**
**SECRETARY, FLORIDA**
**DEPARTMENT OF CORRECTIONS,**

     **Defendant.**

_____/

## SECOND REPORT AND RECOMMENDATION[1]

Plaintiff, a prisoner proceeding pro se, filed a civil rights complaint

asserting claims under the First Amendment and under the Religious Land

Use and Institutionalized Persons Act (RLUIPA).  ECF No. 1.  After the

close of discovery, Plaintiff filed a motion for summary judgment, ECF No.

42, as did the Defendant, ECF No. 47.  The parties were advised of their

obligation to respond to the opposing party's motion.  ECF No. 48.  Both

the Plaintiff and Defendant filed responses.  ECF Nos. 49, 50.  Thereafter,

---

[1] The first Report and Recommendation, ECF No. 25, concerned Defendant's motion to dismiss, ECF No. 20.  The recommendation was adopted and the motion to dismiss was denied.  ECF No. 28.

Defendant filed a reply to Plaintiff's response.  ECF No. 55.  This Report

and Recommendation addresses both motions for summary judgment.

**Allegations of the complaint**

Plaintiff alleged that he is of the Muslim faith.  ECF No. 1 at 7.  He

alleges that Defendant's policy concerning permissible beard length

violates his rights under the First Amendment and RLUIPA.  *Id.*  He also

challenges Defendant's "strip search policy" under both his First

Amendment "right to freely practice his religion" and under RLUIPA.  *Id.* at

15.  He explains that the policy does not allow him "to keep his awrah (area

between navel and knees) covered immediately after being strip searched .

. . .  *Id.* at 17.  As relief, Plaintiff requests that Defendant be required to

"implement a grooming policy" which would allow Plaintiff "to grow a fist

length beard, trim the moustache," and to "cover his awrah after being

stripped out."  ECF No. 1 at 8, 15.

**Legal standards governing a motion for summary judgment**

"The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Put simply,

motions "for summary judgment [are] proper where the issues to be

resolved are questions of law, not fact." <u>United Nat. Ins. Co. v. Horning, Ltd.</u>, 882 F. Supp. 310, 312 (W.D.N.Y. 1995).  Summary judgment is also proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The parties have been provided a discovery period.  ECF No. 34.

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp.</u>, 477 U.S. at 323, 106 S.Ct. at 2553.  The non-moving party must then show[2] the court "that there is an absence of evidence to

---

[2] "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998) (quoting <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. at 2553) (quoting Fed. R. Civ. P. 56(c), (e))).  A nonmoving party need not produce evidence in a form that would be admissible at trial.  <u>Owen</u>, 117 F.3d at 1236; <u>Celotex</u>, 477 U.S. at 324, 106 S.Ct. at 2553.

support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.  An

issue of fact is "material" if it could affect the outcome of the case.  Hickson

Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004)

(citations omitted).  The court must decide "whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law."  Hickson Corp.,

357 F.3d at 1260 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 252,

106 S.Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986)).  All reasonable inferences

must be resolved in the light most favorable to the nonmoving party,

Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), "only if

there is a 'genuine' dispute as to those facts."  Scott v. Harris, 550 U.S.

372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoted in Ricci v.

DeStefano, 557 U.S. 557, 586, 129 S.Ct. 2658, 2677, 174 L. Ed. 2d 490

(2009)).

    "Cross motions for summary judgment do not change the standard."

Latin Am. Music Co. v. Archdiocese of San Juan of the Roman Catholic &

Apostolic Church, 499 F.3d 32, 38 (1st Cir. 2007) (quoted in Ernie Haire

Ford, Inc. v. Universal Underwriters Ins. Co., 541 F. Supp. 2d 1295, 1297

(M.D. Fla. 2008).  "'Cross motions for summary judgment are to be treated

separately; the denial of one does not require the grant of another.'"

Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n, 483 F.3d

1025, 1030 (10th Cir. 2007) (quoting Buell Cabinet Co. v. Sudduth, 608

F.2d 431, 433 (10th Cir. 1979)) (quoted in Ernie Haire Ford, Inc., 541 F.

Supp. 2d at 1297-98)).  Because Plaintiff (as the party with the burden of

proof) has a heavier burden on summary judgment, the Court will consider

the Defendant's motion first.  If Defendant's motion is denied, the Court will

consider whether Plaintiff is entitled to judgment as a matter of law.

**Rule 56 Evidence**[3]

Plaintiff is "a Muslim" prisoner in the custody of the Florida

Department of Corrections; he is currently housed at Martin Correctional

Institution. ECF No. 42, Ex. A [Plaintiff's Aff.] (ECF No. 42 at 17); ECF No.

47, Ex. A (ECF No. 47-1).  Plaintiff is serving a life sentence.  ECF No. 47-

1 at 2.  Plaintiff's affidavit declares his belief that "it is mandatory for an

adult male-Muslim to grow the beard at least a fist length and trim the

---

[3] Plaintiff's summary judgment motion is sworn under penalty of perjury.  ECF No. 42 at 15.  To the degree Plaintiff's motion includes a statement of facts which are based on Plaintiff's personal knowledge, they have been considered.  Defendant submitted two exhibits with her summary judgment motion.  The first exhibit (Ex. A). shows where Plaintiff is currently housed, ECF No. 47-1, and the second exhibit (Ex. B) pertains only to the issue of exhaustion, ECF No. 47-2.

moustache."  ECF No. 42 at 18.  He also believes "it is mandatory for an adult male-Muslim to keep his awrah covered (the area between the navel and knees) in the presence of other people."  *Id.*  Plaintiff is subject to punishment if he does not comply with the rules of the Department of Corrections.  *Id.* at 3.  Plaintiff submitted affidavits of two other Muslim inmates who share the same three beliefs: (1) growing a beard is mandatory; (2) keeping the awrah covered is mandatory; and (3) "trimming the moustache is mandatory."  *Id.* at 21-23 [Ex. A].  The parties do not dispute the underlying facts.  This case raises questions of law, not fact.

**Exhaustion**

Defendant previously filed a motion to dismiss for failure to exhaust administrative remedies.  ECF No. 20.  The argument presented was that Plaintiff failed to file a petition to initiate rulemaking pursuant to Florida's Administrative Procedures Act, FLA. STAT. § 120.54(7)(a).  *Id.*  That motion was denied because the Florida Department of Corrections does not include such a procedure in its grievance process.  ECF Nos. 25, 28. Defendant has once again argued that Plaintiff failed to exhaust administrative remedies because he did not file a petition to initiate

rulemaking.  ECF No. 47 at 7-19 (citing to ECF No. 20).  For the reasons previously explained, this argument should again be rejected.

In making this recommendation, two additional points are worth highlighting.  First, prisoners must comply with rules which "are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 922, 166 L. Ed. 2d 798 (2007); *see also* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (noting that prisoners must comply with the process set forth and established by the grievance procedures). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  Jones, 549 U.S. at 218, 127 S.Ct. at 922-23.  Neither Florida's grievance procedures nor the Inmate Handbook direct prisoners to file such petitions, a fact acknowledged by Defendant Jones.  ECF No. 47 at 18.

Defendant Jones, however, argues in her reply that the Supreme Court did not address "whether the grievance process is the *only* means of proper exhaustion, and to read the Court's language as such is a distortion of Jones."  ECF No. 55 at 4-6.  For the reasons explained below, Defendant's argument is rejected.

The Supreme Court has held that exhaustion requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 2385, 165 L. Ed. 2d 368 (2006) (citation omitted).  Prisoners must "make full use of the prison grievance process," *see* Woodford, 548 U.S. at 94, 126 S.Ct. at 2387, and be required to comply with the rules the Department of Corrections has established and holds out to its prisoners. Prisoners should not be required to use a process which is removed and entirely separate from the prison's grievance procedures.  The Department's "grievance procedure is to provide an inmate with a channel for the administrative settlement of a grievance."  FLA. ADMIN. CODE R. 33-103.001(1).  Inmates are specifically advised that they may "file complaints regarding the . . .  substance, interpretation, and application of rules and procedures of the department that affect them personally."  FLA. ADMIN. CODE R. 33-103.001(4)(a).  Plaintiff's challenges fell within the permissible subject matter of the grievance process, and he complied with the process as stated.  Because filing a petition to initiate rulemaking is not outlined in the Department's procedures to challenge a rule, Plaintiff cannot be said to

have failed to exhaust administrative remedies.  That statutory remedy is separate and apart from the Department's internal grievance procedures.

Second, the Supreme Court's most recent opinion interpreting the exhaustion requirement set forth in 42 U.S.C. § 1997e(a) provides additional support for this recommendation.  In Ross v. Blake, 136 S.Ct. 1850, 1855 and 1860-62, 195 L. Ed. 2d 117 (2016), the Court looked to Maryland's Administrative Remedy Procedure process as it was set forth in the Inmate Handbook.  "That process is the standard method for addressing inmate complaints in the State's prisons . . . ."  Ross, 136 S.Ct. at 1860.  The Eleventh Circuit has also made clear that "prisoners must 'properly take each step within the administrative process.'"  Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) (quoting Johnson v. Meadows, 418 F.3d 1152, 1158 (11th Cir. 2005) (pointing out that "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require") (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002))). The Department's process is the one that must be pursued, not an unknown and unlisted procedure.

The Court in Ross held that inmates do not have an "available" administrative remedy if it so "so opaque that it becomes, practically

speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Ross, 136 S.Ct. at 1859. When a remedy is "essentially 'unknowable' - so that no ordinary prisoner can make sense of what it demands - then it is also unavailable." 136 S.Ct. at 1859 (citing Goebert v. Lee Cnty., 510 F.3d 1312, 1323 (11th Cir. 2007); Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008)).[4]

Defendant Jones has argued that "not having knowledge of the required preconditions to filing suit is not an excuse for failing to meet the preconditions." ECF No. 47 at 18. Going even further, Defendant Jones states that "it should be apparent that Defendant would have an interest in **not** informing and instructing prisoners how to file law suits against the Florida Department of Corrections." *Id.* at 18, n.3. That argument is rejected because it is not in line with guidance from the Supreme Court or the reasons supporting exhaustion.

Section 1997e(a) states that "[n]o action shall be brought with respect to prison conditions . . . until such administrative remedies as are available

---

[4] The Eleventh Circuit held that "Turner's failure to comply with an optional administrative procedure does not amount to a failure to properly exhaust his remedies." Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008).

are exhausted."  42 U.S.C. § 1997e(a).  A primary purpose of requiring

exhaustion is to give an agency the "opportunity to correct its own mistakes

with respect to the programs it administers before it is haled into federal

court."  Woodford, 548 U.S. at 89, 126 S.Ct. at 2385 (quoting McCarthy v.

Madigan, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)).

Defendant's attention is directed to Woodforv v. Ngo.  There, the Supreme

Court rejected a prisoner's argument that in many ways foreshadowed

Defendant's suggestion in this case:

> Respondent [the prisoner] contends that requiring proper
> exhaustion will lead prison administrators to devise procedural
> requirements that are designed to trap unwary prisoners and
> thus to defeat their claims.  Respondent does not contend,
> however, that anything like this occurred in his case, and it is
> speculative that this will occur in the future.  Corrections
> officials concerned about maintaining order in their institutions
> have a reason for creating and retaining grievance systems that
> provide - and that are perceived by prisoners as providing - a
> meaningful opportunity for prisoners to raise meritorious
> grievances.

Woodford, 548 U.S. at 102, 126 S.Ct. at 2392.  A prisoner cannot be

expected to exhaust administrative remedies which are unknown.  An

administrative "remedy" not listed within the Department's grievance

procedures is an "unknowable" and "unavailable" remedy.  Plaintiff cannot

be expected to utilize a procedure not listed in the Inmate Handbook or

described in the Department's Rules.  Prison rules direct the steps for

exhaustion, and those are the rules which must control analysis of whether

or not a prisoner has exhausted administrative remedies.  Plaintiff complied

with the process held out by the Defendant and he exhausted

administrative remedies.

**Analysis**

Plaintiff's challenge is to two Departmental rules.  At the time of the

events in question, the grooming rule provided: "For security and

identification purposes, no inmate shall be permitted to have his or her hair,

to include eyebrows and facial hair, dyed, cut, shaved or styled according

to fads or extremes that would call attention to the inmate or separate

inmates into groups based upon style."  FLA. ADMIN. CODE R. 33-

602.101(4); Plaintiff's Ex. D (ECF No. 1 at 30).  The rule required all

inmates "be clean shaven," unless an "exemption" is granted on the "basis

of a medical diagnosis" which will permit inmates to "keep their facial hair

closely trimmed with scissors of clippers."  FLA. ADMIN. CODE R. 33-

602.101(4).  That 2014 version of the rule, however, is no longer in effect.

The current version of the rule was amended following the Supreme

Court's decision in Holt v. Hobbs, 135 S.Ct. 853, 859, 190 L. Ed. 2d 747

Case No. 4:16cv49-WS/CAS

(2015) (holding that corrections' beard policy violated the "Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 803, 42 U.S.C. § 2000cc et seq., which prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest."). ECF No. 47 at 23. The Florida Department of Corrections' current rule provides:

> All inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard. Such a beard shall include all the hair that grows naturally on the face and front of the neck, excluding eyebrows and eyelashes. Inmates shall not display any other type, style, or arrangement of hair on the face nor front of the neck. Inmates shall not sculpt nor edge their beards.

FLA. ADMIN. CODE R. 33-602.101(4) (effective date: 7-20-2017); *see also* ECF No. 47 at 21.

Plaintiff's first challenge is to grow more than a half-inch beard. He requests permission to grow a "fist full" beard which he explains is approximately "3 inches or a little more." ECF No. 1 at 33. He alleges that the current half-inch beard policy violates his religious beliefs. Defendant contends the rule is not unconstitutional, does not violate RLUIPA, and is

"consistent with the state of the law as established by <u>Holt</u> . . . ."  ECF No.
47 at 23.

Plaintiff's second challenge is that he cannot cover his "awrah" after a
strip search is conducted.  ECF No. 42 at 2; ECF No. 1 at 8, 15-17.  He
alleged that after "strip searches and shakedowns," he must "sit in the day
room" wearing only boxer shorts and shower slides.  ECF No. 1 at 15; *see*
also ECF No. 1 at 44.  Plaintiff states this may last for up to thirty minutes,
or "until the room searches are complete."  ECF No. 1 at 15.  He states that
having his "awrah uncovered is an humiliation and unmodest act in the
Islamic way of life."  *Id.*  Plaintiff seeks amendment of the policy so that he
can "keep his awrah (area between navel and knees) covered immediately
after being strip searched during shakedowns or any other time, after being
stripped."  *Id.* at 17.  In his grievance, Plaintiff specifically requested
permission to put his prison uniform back on after a strip search.  *Id.* at 44.

Although Plaintiff did not identify a specific rule in either his complaint
or his summary judgment motion which is at issue, the attachments to his
complaint indicate the relevant rule is FLA. ADMIN. CODE R. 33-602.204.
ECF No. 1 at 45.  Defendant states that Plaintiff's challenge "deals with the
entirety of the Florida Administrative Code outlining the search policy of the

Florida Department of Corrections."  ECF No. 47 at 22 (citing FLA. ADMIN.

CODE R. 33-602.204).[5]

## RLUIPA Claims

Congress enacted the Religious Freedom Restoration Act of 1993

(RFRA) to "provide greater protection for religious exercise than is

available under the First Amendment."  Holt v. Hobbs, 135 S.Ct. 853, 859-

60, 190 L. Ed. 2d 747 (2015) (citing Burwell v. Hobby Lobby Stores, Inc.,

573 U.S. ——, 134 S.Ct. 2751, 2760-61, 189 L.Ed.2d 675 (2014)).

Congress enacted RFRA by relying "on Section 5 of the Fourteenth

Amendment, but in City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157,

138 L.Ed.2d 624 (1997), [the Supreme] Court held that RFRA exceeded

Congress' powers under that provision."  Holt, 135 S.Ct. at 860 (citing City

of Boerne, Id., at 532–536, 117 S.Ct. 2157).

> Congress responded to City of Boerne by enacting RLUIPA,
> which applies  to the States and their subdivisions and invokes
> congressional authority under the Spending and Commerce Clauses.
> See § 2000cc–1(b). RLUIPA concerns two areas of government
> activity: Section 2 governs land-use regulation, § 2000cc; and
> Section 3—the provision at issue in this case—governs

---

[5] That rule pertains generally to searches, and more specifically to strip searches
and body cavity searches.  Neither party provided the Court with specific language of
any rule that pertains to "shakedowns," where an inmate must sit during cell searches,
or the clothing that is worn during such incidents.

religious exercise by institutionalized persons, § 2000cc–1.
Section 3 mirrors RFRA and provides that "[n]o government
shall impose a substantial burden on the religious exercise of a
person residing in or confined to an institution ... even if the
burden results from a rule of general applicability, unless the
government demonstrates that imposition of the burden on that
person—(1) is in furtherance of a compelling governmental
interest; and (2) is the least restrictive means of furthering that
compelling governmental interest." § 2000cc–1(a). RLUIPA
thus allows prisoners "to seek religious accommodations
pursuant to the same standard as set forth in RFRA." Gonzales
v. O Centro Espírita Beneficente Uniõ do Vegetal, 546 U.S.
418, 436, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006).

Holt, 135 S.Ct. at 860.

Several provisions of RLUIPA underscore its expansive
protection for religious liberty. Congress defined "religious
exercise" capaciously to include "any exercise of religion,
whether or not compelled by, or central to, a system of religious
belief."  § 2000cc–5(7)(A). Congress mandated that this
concept "shall be construed in favor of a broad protection of
religious exercise, to the maximum extent permitted by the
terms of this chapter and the Constitution."  § 2000cc–3(g).
And Congress stated that RLUIPA "may require a government
to incur expenses in its own operations to avoid imposing a
substantial burden on religious exercise." § 2000cc–3(c).

135 S.Ct. at 860 (citing Hobby Lobby, 134 S.Ct. at 2761–62, 2781–82).

"RLUIPA thus protects institutionalized persons who are unable freely to

attend to their religious needs and are therefore dependent on the

government's permission and accommodation for exercise of their religion."

Cutter v. Wilkinson, 544 U.S. 709, 721, 125 S.Ct. 2113, 2122, 161 L. Ed. 2d 1020 (2005).

Plaintiff bears the burden of "showing that the relevant exercise of religion is grounded in a sincerely held religious belief," and he must also demonstrate that the challenged Department of Corrections' policies have "substantially burdened that exercise of religion." Holt, 135 S.Ct. at 862. Once Plaintiff makes that "*prima facie* showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest." Knight v. Thompson, 797 F.3d 934, 943 (11th Cir. 2015); Holt, 135 S.Ct. at 863 (quoting § 2000cc–1(a)). "[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 815, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000) (quoted in Holt, 135 S.Ct. at 864).[6]  RLUIP does not, however, "give courts carte blanche to second guess the reasoned judgments of prison officials." Knight, 797 F.3d at 943.  "The Supreme Court has

---

[6] As an initial matter, judicial notice is taken that the Florida Department of Corrections receives federal funds and is subject to RLUIPA. United States v. Sec'y, Florida Dep't of Corr., No. 12-22958-CIV, 2013 WL 6697786, at *1 (S.D. Fla. Dec. 6, 2013) judgment vacated, appeal dismissed, 778 F.3d 1223 (11th Cir. 2015).

cautioned that '[w]e do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety,' and 'an accommodation must be measured so that it does not override other significant interests.'" Knight, 797 F.3d at 943 (quoting Cutter, 544 U.S. at 722, 125 S.Ct. at 2122). "[P]rison security is a compelling state interest, and . . . deference is due to institutional officials' expertise in this area." Cutter, 544 U.S. at 729, n.13, 125 S. Ct. at 2127, n.13.

Plaintiff has shown that the grooming policy substantially burdens his religious beliefs, and it is undisputed that his beliefs are sincerely held.[7] See Holt, 135 S.Ct. at 862 (citing Hobby Lobby, 134 S.Ct. at 2774, n.28). Plaintiff maintains that he would be punished if he did not comply with Defendant's grooming policy. ECF No. 42 at 3. Defendant does not argue otherwise. Thus, Plaintiff has "met his burden of showing that the

---

[7] "RLUIPA's 'substantial burden' inquiry asks whether the government has substantially burdened religious exercise . . . not whether the RLUIPA claimant is able to engage in other forms of religious exercise." Holt, 135 S.Ct. at 862. The Court accepted that if a prisoner is forced to choose between following his religious beliefs and facing "serious disciplinary action," then he is substantially burdened in his religious exercise. 135 S.Ct. at 862. Additionally, RLUIPA "applies to an exercise of religion regardless of whether it is 'compelled'" and regardless of whether the belief is "shared by all of the members of a religious sect." Id. at 862-63 (citing § 2000cc-5(7)(A)).

Department's grooming policy substantially burdened his exercise of religion, [and] the burden [has] shifted to the Department to show that its [current grooming policies] . . . '(1) [are] in furtherance of a compelling governmental interest; and (2) [are] the least restrictive means of furthering that compelling governmental interest.'" Holt, 135 S.Ct. at 863 (quoting § 2000cc-1(a)).

Defendant contends that the grooming policy complies with the mandates of RLUIPA and is not unconstitutional.  Defendant points out the current policies were adopted in the wake of Holt and are "consistent with the minimum requirement established by the Court."  ECF No. 47 at 23-24; ECF No. 49 at 8-9.

However, Defendant does not demonstrate that its grooming policy meets RLUIPA's compelling interest test, other than to point out that it now permits a half-inch beard, the same length approved by the Supreme Court in Holt.  ECF No. 47 at 22-24.  Although the current rule is consistent with Holt in balancing the compelling interest of prison safety with an inmate's right to practice his religious beliefs, Defendant does not establish why no other means exist to achieve prison security if Plaintiff were permitted to have a 3-inch beard.

"'The least-restrictive-means standard is exceptionally demanding,"

and it requires the government to 'sho[w] that it lacks other means of

achieving its desired goal without imposing a substantial burden on the

exercise of religion by the objecting part[y].'" Holt, 135 S.Ct. at 864

(quoting Hobby Lobby, 134 S.Ct. at 2780).  "[I]f a less restrictive means is

available for the Government to achieve its goals, the Government must

use it." Playboy Entm't Grp., 529 U.S. at 815, 120 S.Ct. 1878 (quoted in

Holt, 135 S.Ct. at 864).  Defendant's sole argument is that the current

grooming rule meets the "minimum requirement established by" Holt.  ECF

No. 47 at 24.  Defendant does not, however, demonstrate why Plaintiff's

requested extension of that policy is not possible.  Defendant does not

explain any basis for the refusal to permit Plaintiff's request.  The Court is

left to surmise or envision why two and a half more inches of a beard

cannot be permitted and still maintain prison security.

RLUIPA puts the burden on the Defendant to sustain a policy or rule,

not the Court.  Deference to the judgment of prison officials does not mean

that a Court must accept, without questioning, the assertion that an

inmate's request cannot be accommodated.  Holt, 135 S.Ct. at 866 (stating

"the courts below deferred to these prison officials' mere say-so that they

could not accommodate petitioner's request.").  "RLUIPA, however,

demands much more."  *Id.*  "Courts must hold prisons to their statutory

burden, and they must not 'assume a plausible, less restrictive alternative

would be ineffective.'"  <u>Playboy Entertainment</u>, 529 U.S. at 824, 120 S.Ct.

1878 (quoted in <u>Holt</u>, 135 S.Ct. at 866).

Additionally, Defendant presented no argument to justify the refusal

to allow Plaintiff to put on clothes after a strip search under RLUIPA.  ECF

No. 47 at 28-30.  Defendant made arguments concerning this rule as to

Plaintiff's First Amendment challenge, *Id.* at 28-30, but not as to the

RLUIPA claim.  The standards of review are different, and so is

Defendant's burden.  Defendant did not meet the burden to show that

requiring Plaintiff to remain in boxer shorts for an extended period of time

after the strip search is completed "is the least restrictive means of

furthering a compelling governmental interest."

Additionally, Defendant misunderstood the nature of Plaintiff's claim.

Plaintiff is *not* contending that he should not be subjected to a strip search.

Rather, his claim was that forcing him to sit in public in his boxer shorts for

up to 30 minutes after the search is a substantial burden on his religious

beliefs.

The only time Defendant correctly addressed the issue as presented by Plaintiff in his complaint was in the reply to Plaintiff's response. ECF No. 55 at 8-9. There, Defendant acknowledged that "it is possible to allow an individual to place his clothes back on after being searched . . . ." *Id.* at 8. Defendant, however, argued that contraband could "be transferred from one individual to another or hidden and then immediately hidden in previously-searched clothes." *Id.* at 9. There are two problems with that argument.

First, Defendant's argument on this point is not evidence. Second, Defendant's argument fails to meet the "exceptionally demanding" standard of showing that the challenged practice is "the least restrictive means." Prohibiting Plaintiff from putting on his prison "uniform" and requiring him to sit in the day room in his boxer shorts has not been shown to be the least restrictive means to control contraband. Controlling contraband is undoubtedly a compelling interest, yet Defendant has not demonstrated that disallowing prisoners to put on "previously-searched clothes" is the least restrictive means to achieve that goal.

Plaintiff has demonstrated RLUIPA violations in both instances. In neither of Plaintiff's challenges has Defendant met her burden to show that

the policies can be sustained under RLUIPA's rigorous "least restrictive

means" test.  Thus, Defendant's motion for summary judgment should be

denied as to Plaintiff's RLUIPA claims and Plaintiff's motion should be

granted.  Nevertheless, Plaintiff's requested relief as stated in the

complaint is for injunctive relief.  ECF No. 1 at 8.  It is recommended that

this case be remanded for further proceedings prior to fashioning an

injunction that properly accommodates Plaintiff's religious beliefs but "does

not override other significant interests."  Cutter, 544 U.S. at 722.  Such an

injunction must meet the requirements of the Prison Litigation Reform Act

(PLRA).  *See* 18 U.S.C. § 3626(a); Cason v. Seckinger, 231 F.3d 777, 785

(11th Cir. 2000) (cited in United States v. Sec'y, Fla. Dep't of Corr., No.

12-22958-CIV, 2015 WL 4768247, at *1 (S.D. Fla. Aug. 12, 2015), aff'd,

828 F.3d 1341 (11th Cir. 2016).

**First Amendment Claims**

Both of Plaintiff's challenges are also brought as First Amendment

violations in addition to the RLUIPA claims.  Because RLUIPA "provide[s]

greater protection for religious exercise than is available under the First

Amendment," *see* Holt v. Hobbs, 135 S.Ct. at 859-60, the recommendation

as to those claims is not dispositive of Plaintiff's First Amendment claims.

The First Amendment, made applicable to the States through the

Fourteenth Amendment, "safeguards the free exercise of [one's] chosen

form of religion."  Cantwell v. State of Connecticut, 310 U.S. 296, 303, 60

S. Ct. 900, 903, 84 L. Ed. 1213 (1940).  While prisoners retain First

Amendment rights, including the First Amendment right of free exercise of

religion, see Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263

(1972) (per curiam), prison regulations or policies "alleged to infringe

constitutional rights are judged under a 'reasonableness' test less

restrictive than that ordinarily applied to alleged infringements of

fundamental constitutional rights."  O'Lone v. Estate of Shabazz, 482 U.S.

340, 349, 107 S. Ct. 2400, 2404, 96 L. Ed. 2d 282 (1987) (holding that the

Turner v. Safley standard of review is applicable to claims that an inmate's

free exercise rights have been violated).[8]  Courts must give respect and

deference to the judgment of prison administrators in considering First

Amendment challenges raised within the confines of prisons or jails.

O'Lone, 482 U.S. at 350, 107 S.Ct. at 2405.

---

[8] "'[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'"  Price v. Johnston, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948) (quoted in O'Lone, 482 U.S. at 348, 107 S. Ct. at 2404).

The <u>Turner</u> standard of review requires the Court to uphold prison

regulations if they are "reasonably related to legitimate penological

interests." <u>O'Lone</u>, 482 U.S. at 350 (determining that <u>Turner v. Safley</u>'s

"reasonableness" test is appropriate to claims of "alleged infringements of

fundamental constitutional rights.").  Thus, "[a] prison regulation, even

though it infringes the inmate's constitutional rights, is an actionable

constitutional violation only if the regulation is unreasonable."  <u>Hakim v.

Hicks</u>, 223 F.3d 1244, 1247 (11th Cir. 2000), *cert. denied*, 532 U.S. 932

(2001) (holding that policy which precluded use of a "dual-name" on inmate

identification card violated inmate's right to the free exercise of religion by

denying him his Muslim identity and was unreasonable under <u>Turner</u>).

The <u>Turner</u> standard employs four factors to determine the

reasonableness of a challenged prison regulation, rule, or policy.  "First,

there must be a 'valid, rational connection' between the prison regulation

and the legitimate governmental interest put forward to justify it."  <u>Turner</u>,

482 U.S. at 89, 107 S. Ct. at 2262 (citing <u>Block v. Rutherford</u>, 468 U.S.

576, 586, 104 S. Ct. 3227, 3232, 82 L. Ed. 2d 438 (1984)).  If the "asserted

goal is so remote" from the regulation such that it appears "arbitrary or

irrational" or if the "governmental objective" is not a legitimate and neutral

one," the regulation or policy cannot be sustained as constitutional.  482

U.S. at 89-90, 107 S. Ct. at 2262.  The remaining three factors consider:

"'(2) whether there are alternative means of exercising the asserted

constitutional right that remain open to the inmates; (3) whether and the

extent to which accommodation of the asserted right will have an impact on

prison staff, inmates, and the allocation of prison resources generally; and

(4) whether the regulation represents an exaggerated response to prison

concerns.'"  Hicks, 223 F.3d at 1247-48 (quoted in Johnson v. Brown, 581

F. App'x 777, 780 (11th Cir. 2014)).  The Court is "not required to weigh

evenly, or even consider explicitly, each of the four Turner factors."

Spies v. Voinovich, 173 F.3d 398, 403 (6th Cir. 1999) (citations omitted).

    First, the Defendant argues that it has "a clear legitimate interest in

maintaining security of its facilities to protect individuals incarcerated and

working within the facilities and to ensure that inmates are readily

identifiable."  ECF No. 47 at 25.  Defendant contends that the grooming

rule facilitates the control of contraband by eliminating a possible way to

conceal such.  Defendant also argues the rule is rationally connected to

that interest.  Plaintiff has not argued to the contrary.  ECF No. 50.  This

first factor weighs in Defendant's favor as a three-inch beard could

conceivably be used to hide contraband.

Second, Defendant maintains that there is an "alternative means" for

Plaintiff to exercise his First Amendment right to practice his religious faith.

ECF No. 47 at 26.  Defendant points out that Plaintiff has the ability to

maintain a ½-inch beard.  *Id.*  Furthermore, it is presumed that Plaintiff may

participate in Islamic worship, have access to literature, and the like,

although no demonstration has been made by either party on this point.

Because Plaintiff has not shown that alternative means are unavailable to

him, this factor also weighs in Defendant's favor.

Third, Defendant asserts that accommodating Plaintiff's right would

have "a major impact on prison staff, inmates, and the allocation of prison

resources generally."  ECF No. 47 at 26-27.  Defendant contends that

"[i]nvalidating the grooming rule would cause a dangerous situation where

inmates" could conceal contraband and make identification difficult.  *Id.* at

27.  Defendant argues that "[i]nvalidating the rule . . . would drastically limit

Defendant's ability to maintain security at the institutions within the state.

Thus, criminal activity would increase and a massive threat to the prisons

in the state would become clear."  *Id.*  On this point, Defendant misses the

mark.  Plaintiff is not seeking to invalidate the grooming rule but amend it.

Plaintiff is not seeking to grow a beard of unlimited length or dispense with

all grooming regulations.  Furthermore, Defendant has made conclusory

assertions unsupported by any facts.  Defendant must do more than

present a "sky-is-falling argument."  <u>Fisher v. Univ. of Texas at Austin</u>, 570

U.S. 297, 321, 133 S. Ct. 2411, 2425, 186 L. Ed. 2d 474 (2013).

Defendant must show the "extent to which accommodation" would have on

staff, resources, and the like.  Because Defendant has not done so, this

third factor weighs in Plaintiff's favor.

The fourth and final factor is whether the rule is an exaggerated

response to prison conditions.  Controlling contraband and easily

identifying inmates is a legitimate and valid concern.  ECF No. 47 at 27.

Yet no showing has been made to explain why a beard 2½-inches longer

cannot be permitted while also controlling contraband and identifying

inmates.  <u>Holt</u>, 135 S.Ct. at 865 (noting that dual-photo method could be

employed to help with identifications).  Based on the conclusory arguments

presented, it cannot be said that the fourth factor weighs in Defendant's

favor either.

Notwithstanding the fairly even weight of these four factors and the conclusion that the policies infringe on Plaintiff's constitutional rights to some degree, Plaintiff has not demonstrated that the rules are "unreasonable."  Defendant has a legitimate governmental interest in providing safe and secure correctional institutions and the challenged policies have a rational connection to that interest.  Plaintiff's rights are necessarily limited by virtue of his incarceration, but he has not shown that he is unable to generally exercise his religious faith.  Moreover, Plaintiff has not provided any meaningful argument as to the Turner factors.  Summary judgment should be granted in favor of Defendant Jones as to Plaintiff's First Amendment claims.

**Recommendation**

It is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, ECF No. 47, be **DENIED** as to Plaintiff's RLUIPA claims and Plaintiff's motion, ECF No. 42, be **GRANTED**.  It is also **RECOMMENDED** that summary judgment be **GRANTED** in favor of the Defendant as to Plaintiff's First Amendment claims.  Finally, it is

**RECOMMENDED** that this case be **REMANDED** for further proceedings

prior to fashioning an injunction on the RLUIPA claims.

    **IN CHAMBERS** at Tallahassee, Florida, on March 1, 2018.


              _S/    Charles A. Stampelos_____
              **CHARLES A. STAMPELOS**
              **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. Rule 3-1; 28 U.S.C. § 636.**